Grady v Hessert Realty L.P. (2019 NY Slip Op 08598)





Grady v Hessert Realty L.P.


2019 NY Slip Op 08598


Decided on December 3, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 3, 2019

Acosta, P.J., Richter, Mazzarelli, Webber, Kern, JJ.


153565/17 -10147A 10147 10146

[*1] Clare Grady, Plaintiff-Respondent,
v
Hessert Realty L.P., et al., Defendants-Appellants.


Belkin Burden Wenig & Goldman, LLP, New York (Magda L. Cruz of counsel), for appellants.
Grimble & LoGuidice, LLC, New York (Robert Grimble of counsel), for respondent.



Judgment, Supreme Court, New York County (Barbara Jaffe, J.), entered June 14, 2019, in plaintiff's favor, unanimously reversed, on the law, without costs, the judgment vacated, and the matter remanded for a recalculation of damages and interest. Appeals from orders, same court and Justice, entered June 29, 2018, and March 28, 2019, which, respectively, granted plaintiff's motion for summary judgment, and denied defendants' cross motion, and, upon reargument, adhered to the original determination, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
In August 1974, nonparties R. John Punnett and Hessert & Co., Inc. purchased the building at 118 East 92nd Street in Manhattan. Punnett and Hessert & Co. transferred the building to nonparty Punnet Realty Corp., which in turn transferred the building back to Punnett and Hessert & Co. in December 1976.
In December 2012, Punnett c/o defendant Mautner Glick Corp. (MGC) sold his interest in the building to defendant 118 East 92nd Street, LLC. Finally, in October 2014, Hessert & Co., c/o MGC, sold its interest in the building to defendant Hessert Realty L.P.
In 1998, apartment 2C in the building was registered with the Department of Housing and Community Renewal (DHCR) with a rent-stabilized rent of $1,022.92. By lease dated May 8, 1999, plaintiff Clare Grady rented apartment 2C from Kent Realty Company as "owner" at a monthly rent of $1,450. Her lease was renewed several times: on February 17, 2000, at a rate of $1,495 per month; on May 10, 2001, at a rate of $1,550 per month; on February 14, 2002, at a rate of $1,550 per month; on March 31, 2003, at a rate of $1,550 per month; and on April 6, 2004, at a rate of $1,550 per month.
Beginning in 2005, the renewal leases listed defendant MGC as "owner's/agent name." The renewal lease dated January 24, 2005 for the apartment set the monthly rent at $1,580. It also stated the apartment was "not subject to rent regulation laws." The lease renewal was signed by defendant Alvin Glick as "owner." This form of lease was used for the renewals on February 21, 2006, at a rate of $1,595 per month; on February 21, 2007, at a rate of $1,695 per month; on February 19, 2008, at a rate of $1,745 per month; on February 19, 2009, at a rate of $1,745 per month; on February 19, 2010, at a rate of $1,650 per month; on February 22, 2011, at a rate of $1,650 per month; on February 15, 2012, at a rate of $1,675 per month; on March 5, 2013, at a rate of $1,725 per month; on February 25, 2014, at a rate of $1,750 per month; on March 11, 2015, at a rate of $1,850 per month; and on March 23, 2016, at a rate of $2,050 per month. Except for the 2009 and the 2015 renewals, the renewal leases were signed by defendant Alvin Glick as owner. From 1999 through 2016, the apartment was not registered with DHCR as rent-stabilized.
By letter dated April 11, 2017, MGC's counsel advised plaintiff that it was electing not to renew her lease, and that she had until May 31, 2017 to vacate the apartment. Plaintiff then [*2]commenced this action seeking declaratory relief and damages on or about April 18, 2017.
By letter dated April 21, 2017, MCG acknowledged receipt of the pleading and provided plaintiff with an analysis of the rent history, determining that the overcharges amounted to $4,626.16 and sending a copy of a check for that amount, together with a renewal lease commencing August 1, 2017 for a monthly rent of $1,767.50 for the first year and $1,802.80 for the second year. Plaintiff declined to accept the offer.
Defendants then registered the apartment with DHCR in May 2017, stating that the monthly rent for the period May 1999 to May 2000 was $1,207.05, and that the rent increase from $1,022.92 was due to a vacancy lease. They also retroactively registered the apartment for years 1999 through 2016, with the legal regulated rent calculated in accord with the Rent Guidelines Board increases applicable during plaintiff's tenancy.
Plaintiff sought declaratory and injunctive relief, and money damages, based on the alleged rent overcharges. Specifically, plaintiff sought: (1) a declaration that the apartment was rent-stabilized, a determination that plaintiff's legal, regulated rent is $1,022.92 per month, and an injunction requiring defendants to comply with the Rent Stabilization Law and Code, including offering plaintiff a proper renewal lease and prohibiting defendants from terminating her tenancy; (2) money damages in the amount of the rent overcharge, alleged to be $106,923.08, plus any subsequent overcharges, with interest; and (3) legal fees under Real Property Law § 234.
Defendants denied the allegations and asserted various affirmative defenses including that they had refunded to plaintiff, any overcharge. Defendants also moved for summary judgment. Defendants argued that the four-year lookback period applied unless plaintiff could prove fraud, which she could not. Defendants claimed they had treated plaintiff as a deregulated tenant based on the representations of prior management, and when they realized their error they offered to reimburse her, and began treating her as a rent-stabilized tenant. Defendants asserted that a rent freeze based solely on the failure to register was unjustified, and that the cases holding otherwise involved clear examples of fraud.
The motion court granted plaintiff's motion for summary judgment and denied defendants' cross motion. The court, while finding scant evidence of fraud, determined that the last legal, registered rent was $1,022.92, and therefore, plaintiff's rent was frozen at that amount. The court also found that because defendants were collecting overcharges prior to lawfully registering the apartment, they were not entitled to any increases in rent. Accordingly, the court calculated the overcharges from the base date of May 2013 to be the difference between $1,022.92 and the monthly rent charged through April 2017. The motion court also found that plaintiff was entitled to attorneys' fees and treble damages.
On June 14, 2019, New York State enacted the Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36) (HSTPA). This legislation made comprehensive changes to the rent laws. As relevant here, Part F of the HSTPA amended RSL § 26-516 and CPLR 213-a, which govern claims of rent overcharge and the statute of limitations for bringing such claims. The amendments to the rent laws that went into effect on the same day that the judgment was entered in this rent overcharge case apply to any claims pending on that date. Because plaintiff's overcharge claims were pending on the effective date of the HSTPA, the changes made therein are applicable here (see Dugan v London Terrace Gardens, L.P., 177 AD3d 1, 10-11 [1st Dept 2019]).
The motion court properly found that pursuant to Rent Stabilization Law (Administrative Code of City of NY) § 26-517(e), that plaintiff's rent was frozen at $1022.92 for the purpose of determining the amount of the overcharge. Defendants failed to file any rent registrations for the apartment after the registration of 1998. That registration reflected a rent of $1022.92. The imposition of a rent freeze reflects a statutory requirement. The Rent Stabilization Code (RSC § 2528.4) provides that an owner who fails to timely file rent registrations with DHCR is barred from collecting rent in excess of the base date rent, and is retroactively relieved of that penalty upon filing a proper registration only when "increases in the legal regulated rent were lawful except for the failure to file a timely registration" (see Nolte v Bridgestone Assoc. LLC, 167 AD3d 498, 499 [1st Dept 2018]; Matter of 215 W 88th St. Holdings LLC v New York State Div. Of Housing & Community Renewal, 143 AD3d 652, 653 [1st Dept 2016]). That is not the [*3]situation here.
The court should have lifted the rent freeze prospectively after defendants filed the rent registration statements with DHCR in May 2017. RSL § 26-517(e) provides that "[t]he filing of a late registration shall result in the prospective elimination of [rent-freeze] sanctions" (see also RSC § 2528.4; Matter of Cardona v New York State Div. of Hous. & Community Renewal, 214 AD2d 393, 394 [1st Dept 1995] ["rent freeze imposed because of an owner's failure to file rent stabilization registration statements may be prospectively eliminated upon the filing of those statements"]). Here, defendants re-registered the apartment with DHCR in May 2017 and filed registration statements for the missing years. Those statements reflected the proper legal regulated rent during plaintiff's tenancy, including lawful increases, bringing the legal rent to $1,767.50 as of May 2017. Thus, defendant is entitled to collect that amount going forward from that date, along with any lawful increases thereafter.
We also find that the court correctly awarded treble damages based on defendants' failure to rebut the presumption of willfulness arising from the admitted overcharges (see Matter of Sohn v New York State Div. of Hous. & Community Renewal, 258 AD2d 384 [1st Dept 1999]). While defendants contend that their offer to refund the overcharges to plaintiff shows that the overcharges were not willful, under Administrative Code § 26-516(a), as amended, the voluntary tender of a refund after a complaint has been filed is not considered evidence of lack of willfulness. In any event, it is disputed as to whether defendants tendered an actual check to plaintiff or the copy of a check.
The court correctly determined that defendants' assumption that the apartment was deregulated, based solely on a representation by prior management, amounts to willful ignorance, which constitutes willful conduct, particularly since defendants are sophisticated property managers and owners (see Matter of Obiora v New York State Div. of Hous. & Community Renewal, 77 AD3d 755, 756 [2d Dept 2010]).
The court correctly determined that defendants Mautner-Glick Corp. and Alvin Glick may be held personally liable as owners, as defined in Rent Stabilization Code (9 NYCRR) § 2520.6(i). In no lease or correspondence with plaintiff contained in the record did these defendants disclose any principal upon whom liability should be imposed instead (see I. Kaszirer Diamonds, Ltd. v Zohar Creations, Ltd., 146 AD2d 492, 494 [1st Dept 1989]).
The court improperly awarded plaintiff prejudgment interest prior to the date of its decision. "Interest on a rent overcharge award is generally authorized from the date of the initial monthly overpayment, except when treble damages are warranted. In those circumstances, treble damages are imposed in lieu of interest from the date of the monthly overcharge to the date of the [court's] decision" (Mohassel v Fenwick, 5 NY3d 44, 50 [2005] [emphasis added]). Because treble damages were awarded here, interest should have been awarded only from the date of the court's decision going forward (id.).
Under the amended RSL § 26-516 (a)(2), "recovery of overcharge penalties shall be limited to the six years preceding the complaint," and treble damages "shall be assessed upon all overcharges willfully collected by the owner starting six years before the complaint is filed." As such, the matter is remanded to the motion court for a recalculation of damages and interest.
We have considered defendants' remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 3, 2019
CLERK